UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVIS GOFF et al.,

      Plaintiffs,                                    Case No. 23-10900

v.

                                                  HON. MARK A. GOLDSMITH

DAVID MONROE et al.,

      Defendants.
_____/

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART CITY DEFENDANTS' MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS (Dkt. 18)**

Plaintiffs Travis and Misty Goff brought this case after their home was searched and Mr. Goff was arrested and charged in connection with reported thefts at University Towers, an apartment building where he worked.

Plaintiffs bring various federal and state claims against Defendants David Monroe, John Dunlap, and the City of Ann Arbor (together, City Defendants), and James Baldini, Dena Isley, Denise Brown, William Spencer, and University Towers LLC (together, University Towers Defendants). Monroe and Dunlap are law enforcement officers employed by the Ann Arbor Police Department and are named in both their official and personal capacities. Baldini is the owner of University Towers, the employer of Isley, Brown, Spencer, and Mr. Goff.

City Defendants have moved for judgment on the pleadings as to the Plaintiffs' Fourth Amendment search and seizure and unlawful arrest claims, substantive due process claim, Monell claim, and civil conspiracy claims.[1] They do not move for judgment on the pleadings with respect

---

[1] Plaintiffs' amended complaint contains ten counts. The first eight are brought under § 1983: (i) a conspiracy claim for unlawful arrest and malicious prosecution based on the 2019 criminal case

to Plaintiffs' claims for negligence or malicious prosecution.² For the reasons stated below, the Court grants the motion as to the claims for unlawful search and seizure (Counts Three and Four) and unlawful arrest (part of Count Five). The Court also grants the motion as to the conspiracy claim (Counts One and Two) based on unlawful arrest as to all Defendants, but denies it as to Brown, Isley, and Monroe for conspiracy claims not based on unlawful arrest. The motion as to the conspiracy claims is granted on all theories as to Spencer and the City of Ann Arbor. The Court denies the motion as to all other counts.

## I. BACKGROUND

The following facts come from Plaintiffs' amended complaint (Dkt. 3).

In 2019, while Mr. Goff was working as a facilities director for University Towers, Monroe, a detective with the Ann Arbor Police Department, began an investigation into suspected robberies at the apartment building. Am. Compl. ¶¶ 21, 39, 43–49. At the direction of Isley—who appears to have had a supervisory role over Mr. Goff, see Am. Compl. ¶¶ 23, 26, 52—Mr. Goff met with Monroe in connection with the investigation. Id. ¶¶ 43–47. Monroe questioned

---

brought against Mr. Goff; (ii) a conspiracy claim for malicious prosecution based on the 2022 criminal case brought against Mr. Goff; (iii) a Fourth Amendment claim for unlawful search and seizure; (iv) a Fourth Amendment claim for "unlawful no-knock warrant"; (v) a Fourth Amendment claim for unlawful arrest and malicious prosecution based on the 2019 criminal case brought against Mr. Goff; (vi) a Fourth Amendment claim for malicious prosecution based on the 2022 criminal case brought against Mr. Goff; and (vii) a substantive due process claim. The last two claims are brought under Michigan state law: (i) a claim for malicious prosecution, and (ii) a claim for negligence.

While Plaintiffs label Count Four as a Fourth Amendment violation based on an "unlawful no-knock warrant," Am. Compl. ¶¶ 104–105, what they describe is a no-knock entry, id. ¶¶ 55, 106. The Court evaluates Plaintiffs' claim for no-knock entry alongside their claim for unlawful search and seizure.

² Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motions, the briefing includes Plaintiffs' response (Dkt. 23) and the City Defendants' reply (Dkt. 24).

Mr. Goff during the meeting as well as over the phone on subsequent occasions. Id. ¶¶ 48–51. Plaintiffs allege a relationship between Isley and Monroe: they contend that Isley referred to Monroe as her "friend," id. ¶ 43, and that Monroe indicated that he was "dating" Isley, id. ¶ 52.

On November 7, 2019, Ann Arbor police officers, accompanied by Monroe, searched Plaintiffs' home. Id. ¶¶ 55, 61. Plaintiffs allege that the officers "no-knock-entered" the residence and seized Plaintiffs' property. Id. ¶¶ 55, 61–65. According to Plaintiffs, when one officer commented that serial numbers on some of the property did not match the property that was reported as stolen, Monroe said to "just take it all and [that they would] sort it out."[3] Id. ¶ 64. Ms. Goff also signed a document that the police told her she had to sign in order to get her property back later. Id. ¶ 66.

That same day, Mr. Goff was handcuffed and taken into police custody. Id. ¶ 57. He was initially placed in a holding cell at the detective bureau and then booked at the Washtenaw County Jail, where he was held until his arraignment on November 9, 2019. Id. ¶¶ 58, 69. Plaintiffs allege that at no time during his detainment did anyone read Mr. Goff his Miranda rights and that his continued requests for an attorney went ignored. Id. ¶¶ 59–60.

Mr. Goff was later charged with multiple felonies. Id. ¶ 69. Brown, Isley, and Monroe testified at the preliminary examination, leading the court to make a finding of probable cause. Id. ¶¶ 71, 76. Plaintiffs claim that Brown, Isley, and Monroe all lied during their testimony. Id. ¶¶ 71–76. The felony charges were dismissed in December 2021. Id. ¶ 69. The dismissal order issued by the 15th District Court included a mandate for the police department to return Plaintiffs' property. Id.

---

[3] Plaintiffs allege that the police "seized their children's X Box 1, their games, one of their children's prescription eyeglasses, several apple watches, two bags of Mr. Goff's shoes and clothing, three iPads, lots of Ms. Goff's clothes, two Bose speakers, and lots of other property. The police also took two of Mr. Goff's guitars and stepped on a 1968 Gibson Hummingbird, destroying it." Am. Compl. ¶ 63.

Mr. Goff was charged again in January 2022. Id. The alleged acts were the same, but this time he was charged with misdemeanors, as opposed to felonies. Id. These charges were dismissed in September 2022. Id. This dismissal was once again accompanied by an order to return the property. Id.

Plaintiffs claim that the City Defendants still possess their property, despite Plaintiffs' repeated requests to reclaim it and despite orders issued by the 15th District Court directing the police department to do so. Id. ¶¶ 67, 77. Plaintiffs allege that the police department told Mr. Goff that they need Monroe's sign-off to return the property, and that Monroe told Mr. Goff in January 2022 that there was an issue with one of the items that prevented its return. Id. ¶ 79. Mr. Goff claims that when he spoke to Dunlap, Monroe's supervisor, Dunlap told Mr. Goff that he should "try being nice to Defendant Monroe and attempt to encourage Defendant Monroe to return his property through kindness." Id. ¶ 81.

Plaintiffs filed this action in April 2023, following which the City Defendants filed their motion for partial judgment on the pleadings.

## II. ANALYSIS[4]

### A. Unlawful Search, No-Knock Entry, and Unlawful Arrest

The City Defendants argue that Plaintiffs' unlawful search, no-knock entry, and unlawful arrest claims are barred by the applicable three-year statute of limitations. See Br. Supp. Mot. at 5–9. They submit that the unlawful search claims accrued on the day of the search, November 7, 2019, and that the unlawful arrest claim accrued on the day Mr. Goff was arraigned, November 9, 2019, the day of Mr. Goff's arraignment. Id. Because Plaintiffs filed their initial complaint in April 2023, the City Defendants argue that these claims were untimely. Id. The Court agrees.

Federal courts apply state statutes of limitations in determining whether a plaintiff's § 1983 claim is timely. See Green v. City of Southfield, 759 F. App'x 410, 414 (6th Cir. 2018). Each of these three claims arose under Michigan law, and therefore, Michigan's three-year statute of limitations for personal injury actions applies. See Mich. Comp. L. § 600.5805(2); Wolfe v. Perry, 412 F.3d 707, 714 (6th Cir. 2005).

Although state law controls the limitations period, federal law dictates when the claims accrue and when the limitations period begins to run. Sevier v. Turner, 742 F.2d 262, 272 (6th Cir. 1984). The general rule is that the limitations periods for unconstitutional search and seizure actions and unlawful arrest actions begin to run at the time of the injury. Wolfe, 412 F3d at 714 (search and seizure); Wallace v. Kato, 549 U.S. 384 (2007) (unlawful arrest). This is when a

---

[4] To survive a motion for judgment on the pleadings, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Bates v. Green Farms Condo. Ass'n, 958 F.3d 470, 480 (6th Cir. 2020) (explaining that the Twombly pleading standard applies to 12(c) motions). "Courts must accept as true all well-pleaded factual allegations . . . ." Bates, 958 F.3d at 480. A plaintiff plausibly pleads a claim for relief if his or her allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (punctuation modified).

plaintiff has "a complete and present cause of action"; in other words, when "the plaintiff can file suit and obtain relief." Bay Area Laundry & Dry Cleaning Pension Tr., 522 U.S. 192, 201 (1997).

**1. Unlawful Search and Seizure**

Courts in this circuit "consistently have held that a section 1983 claim for an improper search and seizure of property accrues on the date the search and seizure takes place." Hamman v. Charter Twp. of Van Buren, No. 20-10849, 2021 WL 534487, at *5 (E.D. Mich. Feb. 11, 2021) (collecting cases). Plaintiffs' unlawful search and seizure claims, including their claim for no-knock entry, accrued on November 7, 2019—the date of the search. Plaintiffs do not contest that they knew the search was happening as it was taking place—Ms. Goff was present and called Mr. Goff during the search, Am. Compl. ¶ 55. See Steel v. Kelly, No. 16-1215, 2016 WL 11618614, at *2 (6th Cir. Aug. 24, 2016) (finding an unlawful search claim to have accrued on the date of the search where the plaintiff was present for the search and thus "knew or had reason to know" of his injury at the time it happened). Plaintiffs were aware of the injury caused by the alleged unlawful search and had "a complete and present cause of action" on November 7, 2019. Accordingly, the statute of limitations expired on November 7, 2022—more than five months before Plaintiffs filed their complaint.

Plaintiffs contend that these claims are not time-barred. Resp. at 4–8. They begin by arguing that the City Defendants' continuous possession of Plaintiffs' property constitutes a continuing violation that has extended the limitations period for their search and seizure claim. Id. at 4. This argument fails. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Broom v. Strickland, 579 F.3d 553, 555 (6th Cir. 2009) (punctuation modified). Plaintiffs have not alleged a continuous Fourth Amendment violation; the City Defendants' retention of Plaintiffs' property is more aptly characterized as a continual "ill effect" resulting from the search and seizure—the alleged violative act ended the

6

same day it began. See Herrin v. Dunham, No. 05-cv-10245, 2008 WL 2781456, at *4–*5 (E.D. Mich. Mar. 17, 2008) (continuing violation doctrine did not apply to search and seizure claim where there was wrongful retention of property, as wrongful retention of property constituted ill effects of initial wrongful seizure). The continuing violation doctrine does not apply here.

Plaintiffs next argue that these claims did not accrue until the charges against Mr. Goff were dismissed, relying on two United States Supreme Court opinions addressing exhaustion and statute of limitations: Heck v. Humphrey, 512 U.S. 477 (1994) and McDonough v. Smith, 139 S.Ct. 2149 (2019). This argument fails, as neither case supports the view that accrual of a claim for search and seizure must await dismissal of a criminal case.

Heck addressed a § 1983 claim brought by a criminal defendant for an alleged "unlawful, unreasonable, and arbitrary investigation," which included the alleged destruction of evidence by law enforcement and unlawful use of a voice identification procedure. See Heck, 512 U.S. at 479. The Supreme Court held that a plaintiff may not bring a § 1983 claim whose success would necessarily invalidate a criminal conviction unless the plaintiff can show that the related conviction or sentence had been invalidated by executive order, reversal on direct appeal, or writ of habeas corpus. Id. at 486–487. The Court reasoned that permitting a § 1983 claim to go forward before a related criminal judgment had been invalidated would allow for parallel civil and criminal litigation, potentially resulting in conflicting outcomes for the same or identical transactions. Id. at 484. It would also be problematic because it would "permit a collateral attack on the conviction through the vehicle of a civil suit." Id. As a result, Heck held that a § 1983 case would have to be dismissed if a conviction that would necessarily be implicated had not yet been invalidated. Heck went on to say that a civil claim based on unlawful search and seizure would not have to be

7

dismissed because a favorable finding on the civil claim "[would not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff."[5] Id. at 487 (emphasis in original).

The Supreme Court also touched on the statute of limitations, noting that equitable tolling need not be addressed, given that the § 1983 claim would not accrue until the conviction or sentence that would be undermined by a civil proceeding had been invalidated. Id. at 489. What Heck did not address is whether accrual of the statute of limitations must be deferred if no criminal judgment is entered against the defendant—the circumstance present in our case.

This last question was answered in in McDonough, 139 S.Ct. at 2158, where the Supreme Court held that a criminal defendant's civil claim based on fabricated evidence did not accrue until the criminal case ended in his favor. The Court reasoned that the civil plaintiff did not have a "complete and present cause of action" while his criminal case was on-going, given that the fabricated-evidence challenge was part and parcel of the criminal proceeding and was yet to be determined. Id.

Plaintiffs in this case read McDonough broadly to mean that the statute of limitations in a § 1983 claim—including one based on unlawful search and seizure—does not begin to run before the parallel criminal cases end in the civil plaintiff's favor. But nothing in McDonough supports such a broad view or suggests that it should be read to apply beyond the context in which it was decided, i.e., a fabricated-evidence claim. Plaintiffs' broad reading of McDonough is inconsistent with Heck, which held that a search and seizure claim would not undermine a criminal judgment. See Heck, 512 U.S. at 487.

---

[5] As the Supreme Court explained: "[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." Heck, 512 U.S. at 487 n. 7 (citations omitted, emphasis in original).

8

Plaintiffs' broad reading of McDonough was also rejected in Hamman, 2021 WL 534487, at *6, which held that "McDonough does not alter the principle that a plaintiff has a complete and present cause of action and can file suit and obtain relief for an unlawful search and seizure at the time the search occurs." As that decision recognized, "federal courts consistently have held that improper property seizure claims accrue at the time of the seizure, including in cases decided after McDonough." Id.

Plaintiffs' effort to extend the accrual date for their search and seizure claim is without merit.

### 2. Unlawful Arrest

Plaintiffs' claim for unlawful arrest accrued on November 9, 2019, at the time of Mr. Goff's arraignment. See Wallace v. Kato, 549 U.S. 384 (2007). Because the statute of limitations on Plaintiffs' claim for unlawful arrest would have expired on November 9, 2022, their claim was untimely when filed in April 2023. Plaintiffs submit that their claim for unlawful arrest is also subject to Heck's delayed accrual rule, arguing that the claim accrued when the criminal case against Mr. Goff was dismissed. Resp. at 5–7. The Court disagrees.

In Wallace, the Supreme Court explained that damages for unlawful arrest claims "cover the time of detention up until the issuance of process or arraignment, but not more"; therefore, the claim accrues and statute of limitations begins to run when the legal process is initiated. Wallace, 549 U.S. at 389–390. The Supreme Court clarified in Wallace, decided after Heck, that the delayed-accrual rule does not apply to § 1983 claims for unlawful arrest. See id. at 392–397. McDonough does not change this analysis, as Plaintiffs' recovery under his claim for unlawful arrest does not necessarily render a related conviction—even if only "merely anticipated"— invalid. One may have been unlawfully arrested but later validly convicted of a crime. Blake v. Cnty. of Livingston, No. 03-74097, 2005 WL 8154802, at *3 (E.D. Mich. Mar. 3, 2005) ("'Because

9

a wrongful arrest claim, like a number of other Fourth Amendment claims, does not inevitably undermine a conviction; one can have a successful wrongful arrest claim and still have a perfectly valid conviction.'") (quoting Booker v. Ward, 94 F.3d 1052, 1056 (7th Cir. 1996)). As Mr. Goff was arraigned on November 9, 2019, Am. Compl. ¶ 69, the claim for unlawful arrest accrued at that time.

Any damages sought by Plaintiffs for unlawful detention after the initiation of the legal process must be based on a malicious prosecution theory. See Wallace, 549 U.S. at 390 (explaining that, once a plaintiff is "bound over by a magistrate or arraigned on charges . . . . unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process" (emphasis in original, punctuation modified)).

Plaintiffs' claims for unlawful search and seizure, including the claim for no-knock entry filed almost three and a half years after the date of injury, are barred by the statute of limitations. Plaintiffs' claim for unlawful arrest is barred for the same reason.

### B. Civil Conspiracy

Plaintiffs allege two counts of conspiracy: one premised on unlawful arrest and malicious prosecution claims arising from Mr. Goff's 2019 criminal case (Count One), Am. Compl. ¶¶ 82–90, and one premised on the malicious prosecution claim arising from Mr. Goff's 2022 criminal case (Count Two), id. ¶¶ 91–98.

Plaintiffs' civil conspiracy claim based on an underlying theory of unlawful arrest is barred by the applicable statute of limitations. A civil conspiracy claim is subject to the limitations period that governs the underlying theory of liability. Mekani v. Homecomings Fin., LLC, 752 F. Supp. 2d 785, 790 n.2 (E.D. Mich. 2010). As the Court explained above, Plaintiffs' unlawful arrest claim is barred by the statute of limitations. The corresponding conspiracy claim is barred as well.

The City Defendants additionally move for judgment on the pleadings as to all of Plaintiffs' civil conspiracy claims on the basis that Plaintiffs plead only "conclusory assertions of a conspiracy" and that "Plaintiffs have not alleged any facts that suggest the existence of any plan, much less the existence of conspiratorial objective among the defendants." Br. Supp. Mot. at 12. The Court finds that Plaintiffs have pled sufficiently specific allegations of conspiracy with respect to Brown, Isley, and Monroe; the claims against those defendants survive the motion for judgment on the pleadings. The Court finds that Plaintiffs have not sufficiently alleged that Spencer and the City of Ann Arbor participated in any alleged conspiracy; judgment on the pleadings is granted as to the conspiracy claims against those defendants.

Michigan law defines a civil conspiracy as "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." Admiral Ins. Co. v. Columbia Cas. Ins. Co., 486 N.W.2d 351, 358 (Mich. Ct. App. 1992). Conspiracy claims "must be pled with some degree of specificity[,] and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." Fieger v. Cox, 524 F.3d 770, 776 (6th Cir. 2008). To prevail on a claim for civil conspiracy, a plaintiff must demonstrate that: "(1) a single plan existed, (2) the defendants shared in the general conspiratorial objective to deprive a plaintiff of his constitutional or federal statutory rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to the plaintiff." Trans Rail Am. Inc. v. Hubbard Twp., 478 F. App'x 986, 988 (6th Cir. 2012) (punctuation modified).

In both conspiracy counts, Plaintiffs allege that Brown, Isley, and Monroe lied in order to implicate Mr. Goff and to establish probable cause before the court presiding over the criminal hearings. Id. ¶¶ 88, 96. They allege that the 2019 criminal charges specifically "were based entirely on the lies of Ms. Isley, Ms. Brown, and Defendant Monroe who conspired to create a

11

criminal case against Mr. Goff based on non-existent evidence that they knew to be false"; they also list the lies they contend that each of the defendants told.[6] Id. ¶¶ 70–76.

Plaintiffs also allege relationships between Brown, Isley, and Monroe. They assert that the "defendants worked together for months, and as it turned out for years, to ensure that Mr. Goff would have baseless criminal charges against him." Id. ¶¶ 89, 97. They allege that Isley and Brown worked together at University Towers. Id. ¶¶ 14, 39, 42. They also claim that Isley consistently referred to Monroe as her "friend Detective David Monroe," id. ¶¶ 43, 46, and that Monroe told Plaintiffs that he was "dating" Isley, id. ¶ 52.

While these allegations are certainly not prolix, they are sufficient to plead (i) a single plan—to lie during the preliminary hearing—(ii) a general conspiratorial objective—to get Mr. Goff prosecuted—and (iii) an overt act—the specific lies that Isley, Brown, and Monroe allegedly told.

With respect to Spencer and the City of Ann Arbor, however, Plaintiffs have failed to allege sufficient facts of conspiracy to survive the City Defendants' motion for judgment on the pleadings. Spencer and the City of Ann Arbor are listed by name in the headings of both conspiracy counts, but the complaint contains no allegations of conspiracy specific to these two defendants, in the body of the conspiracy counts or elsewhere. The Court finds that Plaintiffs have not alleged with sufficient particularity that Spencer and the City of Ann Arbor participated in the alleged conspiracies; therefore, the Court grants judgment on the pleadings as to the conspiracy claims against those defendants. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

---

[6] Plaintiffs do not repeat the same conspiracy allegations as to the 2022 case. They do not mention any preliminary examination or otherwise explain how the second prosecution came about. But there is a fair inference that the 2022 case resulted from the same allegedly conspiratorial acts that gave rise to the 2019 case.

12

### C. Substantive Due Process

The City Defendants urge the Court to grant judgment on the pleadings as to Plaintiffs' substantive due process claim, arguing that Plaintiffs do not allege conduct that "shocks the conscience." Br. Supp. Mot. at 13–14. The Court disagrees, finding that Plaintiffs' substantive due process claim cannot be decided as a matter of law at this stage.

The substantive due process component of the Fourteenth Amendment bars "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986). Substantive due process claims "often fall into one of two categories—claims that an individual has been deprived of a particular constitutional guarantee, or claims that the government has acted in a way that shocks the conscience." Handy-Clay v. City of Memphis, 695 F.3d 531, 547 (6th Cir. 2012) (punctuation modified).

Plaintiffs allege that the City Defendants have "to this day . . . refused to return [Plaintiffs'] property to them, despite their [sic] being two court orders issued by the 15th District Court mandating the return of the [Plaintiffs'] seized property to them." Am. Compl. ¶ 67. More specifically, they allege that they have "repeatedly" requested their property back; that they have been advised by the Ann Arbor Police Department that they are waiting for Monroe to sign off on the property's return, id. ¶¶ 77–78; and that Dunlap told Plaintiffs that they should "attempt to encourage Defendant Monroe to return [their] property through kindness," id. ¶ 81.

The facts pled in the complaint plausibly allege a substantive due process violation. The Court will not dismiss the substantive due process claim at this stage.

### D. Monell Claims

The City Defendants argue that Plaintiffs have failed to allege sufficient facts to support their Monell claim against the City. Br. Supp. Mot. at 9–12. The Court disagrees.

A city "may not be sued under § 1983 for an injury inflicted solely by its employees or

13

agents." Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 694 (1978). A city may be liable under § 1983, however, "where its official policy or custom actually serves to deprive an individual of his or her constitutional rights." Baynes v. Cleland, 799 F.3d 600, 620 (6th Cir. 2015) (punctuation modified). A plaintiff may demonstrate that a city's official policy or custom caused his or her injury by demonstrating the existence of one or more of the following: (1) an illegal official policy or legislative enactment; (2) an official with final decision-making authority who ratified illegal actions; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. Lipman v. Budish, 974 F.3d 726, 747 (6th Cir. 2020).

Plaintiffs allege both illegal official policies and the existence of a policy of inadequate training or supervision. See Am. Compl. ¶¶ 140–142. They allege the following policies:

   (i)   Arresting and charging people such as Mr. Goff without probable cause;
   (ii)  Lying in affidavits to obtain search warrants;
   (iii) Lying in police reports to wrongfully and falsely document false criminal charges against people such as Mr. Goff;
   (iv)  Conducting no-knock search warrants;
   (v)   Depriving people such as Mr. Goff of their property without their being any lawful basis whatsoever to do so.

Id. ¶ 140.

With respect to inadequate training or supervision, Plaintiffs allege that (i) the City "had a training program in place for Detective Monroe and Sergeant Dunlap that is inadequate to the tasks that the officers must perform," (ii) "the inadequacy is the result of the city's deliberate indifference," and (iii) "the inadequacy is closely related to or actually caused" Plaintiffs' injury. Id. ¶ 141.

Plaintiffs allege both illegal policies and inadequate training or supervision with sufficient specificity at this stage. While it remains to be seen whether Plaintiffs will provide persuasive evidence of the existence of these policies, the Court finds that the Plaintiffs' Monell claims do

14

not fail on the pleadings as a matter of law.

### III. CONCLUSION

For the reasons explained above, the Court grants the City Defendants' motion for judgment on the pleadings (Dkt. 18) as to Plaintiffs' claims for unlawful search and seizure (Counts Three and Four) and for unlawful arrest (part of Count Five). The Court also grants the motion as to the conspiracy claim (Counts One and Two) based on unlawful arrest as to all Defendants, but denies it as to Brown, Isley, and Monroe for conspiracy claims not based on unlawful arrest. The motion as to the conspiracy claims is granted on all theories as to Spencer and the City of Ann Arbor. The Court denies the motion as to all other counts.

SO ORDERED.

Dated: January 30, 2024  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge